1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RENEE HATCH,

              Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

              Defendant.

CASE NO.    C05-5748KLS

ORDER REVERSING THE
COMMISSIONER'S DECISION
TO DENY BENEFITS AND
REMANDING FOR FURTHER
PROCEEDINGS

      Plaintiff, Renee Hatch, has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits.  The parties have consented to have this matter be heard by the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Magistrates Rule 13.  After reviewing the parties' briefs and the remaining record, the undersigned hereby finds and ORDERS as follows:

<u>FACTUAL AND PROCEDURAL HISTORY</u>

      Plaintiff currently is forty-two years old.[1] Tr. 26. She has a high school education, vocational training as a medical office assistant and past work experience as a cashier, stocker, dog butler, motel maid,

---

    [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER
Page - 1

sales associate, laundry attendant, certified nurse assistant, and fast food worker. Tr. 18, 74, 79, 82, 140, 145, 185, 190.

On November 28, 2000, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of April 4, 2000, due to anxiety attacks, depression, post traumatic stress syndrome ("PTSD"), and lower jaw problems. Tr. 56, 73, 360. Her applications were denied initially and on reconsideration. Tr. 17, 26, 29, 364. It appears plaintiff did not seek further administrative review of these applications.

Plaintiff filed two more applications for disability insurance and SSI benefits on May 30, 2002, and April 30, 2002, respectively, alleging disability as of January 5, 2002, due to anxiety, depression and problems with her knees, feet, jaw and back. Tr. 17-18, 61, 134, 184, 366. She later amended her alleged onset date of disability to December 27, 2001. Tr. 64. Those applications again were denied initially and on reconsideration. Tr. 17, 27-28, 33, 41, 370-72. A hearing was held before an administrative law judge ("ALJ") on October 21, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. Tr. 379-432.

On February 22, 2005, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of chronic low back pain, degenerative joint disease, chondromalacia of the left knee, personality disorders, and affective disorders;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform sedentary work with certain additional non-exertional limitations, which precluded her from performing her past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 24-25. Plaintiff's request for review was denied by the Appeals Council on October 12, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981, § 416.1481.

On November 18, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for further administrative proceedings for the following reasons:

(a)   the ALJ erred in evaluating the medical source opinion evidence in the record concerning plaintiff's mental functional limitations;

(b)   the ALJ erred in finding plaintiff's headaches, anxiety and Morton's neuroma to be not severe;

(c)   the ALJ erred in assessing plaintiff's credibility;

(d)   the ALJ erred in evaluating the lay witness evidence in the record;

(e)   the ALJ erred in assessing plaintiff's residual functional capacity; and

(f)   the ALJ failed to pose a proper hypothetical question and ignored vocational expert testimony at step five of the disability evaluation process.

For the reasons set forth below, the Court finds the ALJ erred in determining plaintiff to be not disabled, and remands this matter to the Commissioner for further administrative proceedings.

DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Erred in Evaluating the Medical Source Opinion Evidence in the Record Concerning Plaintiff's Mental Functional Limitations

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts

1  "falls within this responsibility." Id. at 603.

2      In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be
3  supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a
4  detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation
5  thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence."
6  Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the
7  ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

8      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of
9  either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a
10  treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and
11  legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the
12  ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739
13  F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain
14  why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07
15  (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

16      In general, more weight is given to a treating physician's opinion than to the opinions of those who
17  do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of
18  a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or
19  "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190,
20  1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242
21  F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the
22  opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A nonexamining physician's opinion may
23  constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-
24  31; Tonapetyan, 242 F.3d at 1149.

25      John Robinson, Ph.D., and Anita Peterson, Ph.D., two non-examining consulting psychologists who
26  reviewed the medical evidence in the record in early August 2002, found plaintiff to be moderately limited in
27  her ability to work in coordination with or proximity to others without being distracted by them, accept
28  instructions and respond appropriately to criticism from supervisors, and get along with co-workers or

ORDER
Page - 4

1  peers without distracting them or exhibiting behavioral extremes. Tr. 295. Plaintiff argues the ALJ erred by

2  failing to consider any of these mental functional limitations. The Court agrees.

3      The only mention the ALJ made of the review conducted by Dr. Robinson and Dr. Peterson was to

4  state that they found plaintiff's "mental impairment was not sufficiently severe to meet or equal any" of the

5  impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19. Defendant argues the ALJ used

6  their review, along with other medical source evidence in the record, "to fashion reasonable mental work

7  limitations to simple, routine, repetitive work, with no public contact." Defendant's Brief, p. 6. Defendant

8  asserts the ALJ "has no obligation to use magic words so long as the weight of the evidence supports [the]

9  limitations and choices set and made." Id.

10      It is true, as noted above, that the ALJ "need not discuss *all* evidence presented" to him or her, or

11  recite "magic words" in his decision, as "it serves no purpose to require every step of each decisional

12  process to be enunciated with precise words and phrases drawn from relevant disability regulations."

13  Vincent, 739 F.3d at 1394-95 (citation omitted) (emphasis in the original); Magallanes v. Bowen, 881 F.2d

14  747, 755, (9th Cir. 1989); Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986). Here, however, the

15  review provided by Drs. Robinson and Peterson constitutes "significant probative evidence," which the ALJ

16  must consider, but failed to properly do so in this case. Id.; Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d

17  at 610. Indeed, the ALJ's decision contains little in the way of substantive analysis of the medical evidence

18  in the record with respect to plaintiff's mental functional limitations.

19      Plaintiff further argues the ALJ failed to provide specific and legitimate reasons for disregarding the

20  opinions of Daniel M. Neims, Psy.D., and Dana B. Hanford, Ph.D., who evaluated plaintiff in mid-

21  November 1997, and early June 1998, respectively. Again, the Court agrees. Dr. Neims found plaintiff to

22  be moderately limited in her ability to respond appropriately to and tolerate the pressures and expectations

23  of a normal work setting. Tr. 245. Dr. Hanford opined that plaintiff was markedly limited in that area, as

24  well as in her ability to relate appropriately to co-workers and supervisors. Tr. 250.

25      The ALJ did not even mention Dr. Neims opinion in his decision. With respect to the opinion of Dr.

26  Hanford, the ALJ found in relevant part as follows:

27      The undersigned took into consideration Dr. Hanford's assessment that the claimant
        makes poor decisions, can't keep jobs, debilitating physical ailments, and domestic abuse
28      (Exhibit 11F). However, he saw the claimant on referral -- one time. His review was
        based solely on claimant's representation (Exhibit 12F).

Tr. 21.  While it may be true that Dr. Hanford saw plaintiff on referral only one time, this is generally true with regard to all examining medical source opinions.  Further, the ALJ does not state what other medical source opinion he found to be more reliable than Dr. Hanford's.  As such, it appears the ALJ improperly substituted his own lay opinion for that of an acceptable medical source.  See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Gober v. Mathews, 574 F.2d 772, 777 (3rd Cir. 1978) (ALJ not free to set own expertise against that of physician who testified before him).

The ALJ's statement that Dr. Hanford's review was based solely on plaintiff's representation also was not a legitimate reason for rejecting her opinion in this case.  The diagnoses and observations of psychiatrists and psychologists constitute competent evidence when mental illness is the basis of a disability claim:

> Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine. In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices in order to obtain objective clinical manifestations of mental illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000)  (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)) (emphasis added); see also Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion that is based on clinical observations supporting diagnosis of depression is competent evidence).  Thus, it is not appropriate to reject the opinion of Dr. Hanford merely because it may have been based primarily on a mental status interview of plaintiff rather than on any formal psychological testing findings.  In any event, in addition to plaintiff's self-report, Dr. Hanford's evaluation did include formal psychological testing. See Tr. 253.

Defendant argues the opinions of Dr. Neims and Dr. Hanford are not relevant to the period of time

at issue in this case, and therefore they merited no further attention than the ALJ gave them.  Specifically,

defendant asserts that because plaintiff did not appeal her first set of applications, and because her second

set of applications alleged an onset date of January 5, 2002, then by implication she admitted she was not

disabled prior to January 2002.  This, however, was not a reason provided by the ALJ for disregarding or

rejecting the opinion of either Dr. Neims or Dr. Hanford. See Ceguerra v. Secretary of Health and Human

Services, 933 F.2d 735, 738 (9th Cir.1991) ("A reviewing court can evaluate an agency's decision only on

the grounds articulated by the agency.").  In addition, the ALJ himself referred to Dr. Hanford's opinion and

evaluation in his decision (Tr. 19, 21), and appears to have accepted plaintiff's original alleged onset date of

disability in determining her eligibility for benefits (Tr. 18).[2]

It is true, as plaintiff asserts, that where the ALJ has failed "to provide adequate reasons for

rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of

law." Lester, 81 F.3d at 834 (citation omitted).  The Court, however, declines to find the ALJ was required

to adopt the opinions of either Dr. Neims or Dr. Hanford regarding plaintiff's mental functional limitations.

A significant portion of the medical opinion evidence in the record regarding plaintiff's mental impairments

indicate they resulted in much less severe work-related restrictions.  For example, two other examining

medical sources, and a third non-examining medical source, all found plaintiff had no mental impairment

that would prohibit her from working.  Tr. 206-23, 278-83.  Issues still remain, therefore, as to the nature

and severity of all of plaintiff's mental functional limitations.

II.    The ALJ Properly Found Plaintiff's Headaches, Anxiety and Morton's Neuroma to Be Not Severe

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

sequential evaluation process. 20 C.F.R. § 404.1520, § 416.920.  At step two of that process, the ALJ must

---

[2]In her reply brief, plaintiff argues the ALJ de facto re-opened her prior applications by considering Dr. Hanford's opinion and stating that her alleged onset date of disability was April 4, 2000. Plaintiff's Reply Brief, p. 2.  A de facto re-opening of a prior administrative decision occurs, and that decision will be subject to judicial review, "where the Commissioner considers 'on the merits' the issue of the claimant's disability during the already-adjudicated period." Lester, 81 F.3d at 827; Lewis v. Apfel, 236 F.3d 503, 510 (9th Cir. 2001).  However, "where the discussion of the merits is followed by a specific conclusion that the claim is denied on res judicata grounds, the decision should not be interpreted as re-opening the claim and is therefore not reviewable." Krumpelman, 767 F.2d at 589 (citing McGowen v. Harris, 666 F.2d 60, 68 (4th Cir. 1981)).

Although the ALJ in this case stated in the beginning of his decision that it was "not necessary to consider the question of whether the unfavorable decision made with respect to the prior claimant should be reopened and revised" (Tr. 18), he then went on to state he was accepting plaintiff's prior alleged onset date of disability and specifically discussed Dr. Hanford's opinion (Tr. 18, 20-21).  On the other hand, it is not clear that the Court has the authority to review the denial of plaintiff's prior applications. See Udd v. Massanari, 245 F.3d 1096, 1098 (9th Cir. 2001) (judicial review limited to final decision made after hearing).  It is not necessary for the Court to find the ALJ de facto re-opened those applications, however, as remand for further proceedings is being ordered in this case in any event for the reasons set forth herein.

ORDER
Page - 7

1  determine if an impairment is "severe." Id.  An impairment is "not severe" if it does not "significantly limit"

2  a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), §

3  416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities

4  are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR

5  85- 28, 1985 WL 56856 *3.

6        An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

7  than a minimal effect on an individual['s] ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v.

8  Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff

9  has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work

10  activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

11  601 (9th Cir. 1998).  The step two inquiry described above, however, is a de minimis screening device used

12  to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

13        Plaintiff argues the ALJ erred in finding her headaches, anxiety and Morton's neuroma were not

14  severe impairments.  Specifically, plaintiff asserts that her testimony and own reports to the treating and

15  examining medical sources in the record show that these impairments were not slight abnormalities.  As

16  discussed below, however, the ALJ did not err in discounting plaintiff's credibility.  Accordingly, the ALJ

17  was not required to rely on the statements plaintiff made to her medical providers or the testimony she gave

18  at the hearing in determining the severity of her alleged impairments.

19        In addition, plaintiff has pointed to no objective medical evidence in the record, nor can the Court

20  find any, showing that any of the above alleged impairments resulted in more than a minimal effect on her

21  ability to work.  Plaintiff argues that her headaches, anxiety and Morton's neuroma could adversely impact

22  her ability to remain competitive for full-time work.  This, however, is not the proper test for determining

23  the severity of a mental or physical impairment.  In other words, the mere possibility that an impairment

24  could cause significant work-related limitations is insufficient to meet the burden of proof plaintiff has at

25  this step of the disability evaluation process.[3]

26  III.    The ALJ Did Not Err in Assessing Plaintiff's Credibility

27  _____

28        [3]Plaintiff also briefly mentions her obesity, which she implies should have been found to be severe as well. See Plaintiff's
Opening Brief, p. 17.  Again, though, there is no objective medical evidence in the record to show that plaintiff's obesity has
caused a more than minimal effect on her ability to perform basic work-related tasks.

1    Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d

2    639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination. Allen, 749

3    F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is

4    based on contradictory or ambiguous evidence. Id. at 579.  That some of the reasons for discrediting a

5    claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

6    as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

7    Cir. 2001).

8    To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

9    disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

10   what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v.

11   Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

12   the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at

13   834.  The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811,

14   818 (8th Cir. 2003).

15   In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

16   evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

17   testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

18   also may consider a claimant's work record and observations of physicians and other third parties regarding

19   the nature, onset, duration, and frequency of symptoms. Id.

20       The ALJ made the following findings concerning plaintiff's credibility:

21       The claimant's statements concerning her impairments and their impact on her ability to
         work are not entirely credible in light of [the] claimant's own description of her activities
22       and life style, the degree of medical treatment required, discrepancies between the
         claimant's assertions and information contained in the documentary reports, the reports
23       of the treating and examining practitioners, the medical history, the findings made on
         examination, and the claimant's assertions concerning her ability to work.
24
         The claimant alleged inability to work due to low back pain, knee problems, muscle
25       disorders, and depression that are aggravated by any physical activity, including sitting,
         standing, and walking for prolonged periods, are not fully credible.  They are inconsistent
26       with the objective medical evidence, the absence of more aggressive treatment, and the
         claimant's ordinary activities.  The claimant undoubtedly experiences physical pain and
27       emotional stress, but has not required hospitalizations for any physical or mental
         difficulties, no surgical intervention or other aggressive treatments have been prescribed,
28       and she obtains good, if not total, relief from her prescribed medications when she takes
         them as instructed.  Clinical and laboratory findings have been mostly negative and any

abnormalities have been only mild or minimal (see Exhibits 13F/3&5, 15F/2). The claimant is able to care for her personal needs and perform some household chores such as cooking, sweeping, washing dishes, doing laundry, and shopping with some help (Exhibit 17F/2). There has been no showing of significant neurological deficits or that the claimant is unable to effectively use her upper and lower extremities (see Exhibit 17F). The claimant alleged that she also suffers with hand and thyroid problems. The record contains no clinical laboratory evidence to support a disabling impairment in this area. There is no indication of any psychological or physiological abnormalities which would preclude all work activities. . . . the claimant was able to work successfully for years. Overall, the Administrative Law Judge is not convinced that the claimant's subjective complaints are credible to the degree that she would be precluded from performing a range of sedentary work.

Tr. 21.

Plaintiff argues her level of activity does not preclude a finding of disability. While this certainly may be true, though the Court makes no findings in that regard, to determine whether plaintiff's symptom testimony is credible, the ALJ may consider the nature and extent of her daily activities. Smolen, 80 F.3d at 1284. Thus, such testimony may be rejected if a claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. On the other hand, a claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff makes no specific showing to refute the ALJ's reliance on her activities of daily living for discounting her credibility. Indeed, the evidence in the record indicates plaintiff is capable of substantial engagement in such activities. For example, she reported in early June 1998, that she "spent much of her time gardening and caring for" her home. Tr. 254. In late January 2000, plaintiff reported that her hobbies included "gardening her one and a half acres and going on walks." Tr. 263. In early May 2001, she reported that she did not like going to the store by herself, but could when she had to do so. Tr. 207. She also stated that she liked to cook, and that she cleaned and went grocery shopping with her husband. Tr. 209. Her activities of daily living were found to be "reasonably intact." Tr. 210; see also Tr. 221, 308 (finding only mild restrictions in her activities of daily living).

In late June 2002, plaintiff reported that she currently worked at a laundromat three days a week. Tr. 279. While such work alone may not rise to the level of substantial gainful activity, it is indicative of an ability to engage in daily activities at a level greater than that claimed by plaintiff. In mid-July 2002, she reported that she could cook, sweep, do the dishes and laundry, and go shopping, albeit the latter only with help. Tr. 285. In late September 2004, plaintiff reported that she was "very active" and was "studying to be

a paralegal." Tr. 336, 355.  Accordingly, the Court finds the ALJ did not err in discounting plaintiff's credibility in part due to her activities of daily living.

The only other argument plaintiff puts forth to support her allegations of error on the part of the ALJ here is that the ALJ improperly discounted the medical evidence that weighs in her favor and the lay witness statements that support her subjective complaints.  The Court agrees the ALJ erred in discounting plaintiff's credibility in part based on the medical evidence in the record concerning her mental functional limitations, as the ALJ erred in evaluating that evidence as discussed above.  On the other hand, the ALJ did not err in discounting plaintiff's credibility because her physical complaints were inconsistent with the objective medical evidence with respect thereto in the record.  See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement).

There is little objective medical evidence in the record to show that plaintiff suffers from disabling physical impairments, notwithstanding her allegations and testimony to the contrary.  See Tr. 226, 229-30, 234-42, 257, 259-64, 271, 273-74, 276-77, 284-91, 312-16, 318-20, 323-26, 329-33, 336, 339, 344-46, 349-50, 353, 355.  In addition to plaintiff's activities of daily living, furthermore, the ALJ discounted her credibility in part due to "the absence of more aggressive treatment" in the record. Tr. 21; see Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

While, as discussed below, the ALJ did err in failing to consider the lay witness statements in the record, plaintiff again makes no showing as to how those statements establish that the ALJ's reasons for discounting her credibility are invalid.  Thus, the mere fact that one of the ALJ's reasons for discounting plaintiff's credibility was improper (inconsistencies between plaintiff's self-reports and testimony and the medical evidence in the record concerning her mental impairments and limitations), does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148.

IV.     The ALJ Erred in Evaluating the Lay Witness Statements in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Plaintiff argues the ALJ improperly rejected and ignored the lay witness statements contained in the record. The Court agrees. While the ALJ acknowledged the testimony of plaintiff's sister-in-law (Tr. 21), he gave no indication as to whether he was adopting or rejecting that testimony. Although the ALJ need not provide the level of specificity required to reject plaintiff's testimony, he must at the very least provide some germane reason or reasons for not adopting lay witness testimony. Because the ALJ did not do so in this case, he erred.

V.     The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the

1  medical or other evidence." Id. at *7.

2         Here, the ALJ assessed plaintiff with the following residual functional capacity:

3         The evidence supports a finding that she is not able to lift and carry more than ten
          pounds and can sit for ½ hour and 6 total; stand and/or walk 1 hour and 6 hours total;
4         stand and/or walk 15 minutes maximum and 2 hours total; and can never squat, kneel,
          crawl, or climb; can only occasionally balance, stoop or crouch. In addition, she is
5         capable of simple, routine, repetitive work that does not involve public interactions. She
          should avoid working around hazards such as unprotected heights or moving machinery
6         (knee gives out). This is consistent with Dr. [Melvin] Jackson's assessment dated in
          July 2002 that the claimant could perform sedentary work (Exhibit 17F).

7  Tr. 21-22. Plaintiff argues the ALJ erred by not considering the combined effects of her headaches, anxiety

8  and Morton's neuroma in determining whether she was disabled, and thus, by implication, in assessing her

9  residual functional capacity. As discussed above, however, the objective medical evidence in the record

10 fails to establish that those impairments resulted in any functional limitations that had more than a minimal

11 effect on her ability to do basic work activities. Accordingly, the ALJ did not err in declining to consider

12 any such limitations here or in determining plaintiff's alleged disability overall.[4]

13        On the other hand, the Court agrees that the above residual functional capacity assessment cannot be

14 upheld, in light of the ALJ's failure to properly evaluate the medical opinion evidence in the record as

15 discussed above. Nevertheless, also for the reasons discussed above, the Court disagrees that the opinions

16 of either Dr. Neims or Dr. Hanford clearly show plaintiff is unable to perform the basic mental demands of

17 competitive, remunerative work, or that the ALJ was required to include in the residual functional capacity

18 assessment the limitations found by those two medical sources or by Drs. Peterson and Robinson. That is,

19 the medical evidence in the record is conflicting concerning plaintiff's actual limitations, and thus remand is

20 appropriate here to determine what those limitations in fact are.

21        The Court further rejects plaintiff's contention that the ALJ did not identify her limitations on a

22 function-by-function basis, and merely stated that she would not be precluded from performing a range of

23 sedentary work. As can be seen above, the ALJ clearly gave a detailed, function-by-function, assessment of

24 plaintiff's residual functional capacity. While that assessment may have been erroneous with respect to

25 plaintiff's mental functional limitations, nevertheless there certainly is no validity to the accusation that the

26

27        [4]While it certainly may be that in assessing residual functional capacity, the ALJ "must consider limitations and
28 restrictions imposed by all of an individual's impairments, even those that are 'not severe'" (see SSR 96-8p, 1996 WL 374184
   *5), here, as discussed above, plaintiff has not shown, nor does the record indicate, that she suffers from any significant limitations
   due to these alleged impairments.

ORDER
Page - 13

ALJ gave a mere "boilerplate" reference to performing sedentary work.  Needless to say, however, the Commissioner likely is well aware a sufficiently adequate function-by-function residual functional capacity assessment again must be provided on remand.

VI.     The ALJ's Step Five Analysis Was Improper

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ posed a hypothetical question to the vocational expert that was substantially similar to his assessment of plaintiff's residual functional capacity. Tr. 428.  In response thereto, the vocational expert testified that there was other work plaintiff could perform. Tr. 428-29.  Based on that testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 23.  Plaintiff argues the ALJ erred in failing to include all of her mental functional limitations in the hypothetical question he posed to the vocational expert.  The Court agrees, but, as discussed above, it is not at all clear exactly which such limitations the ALJ was required to include therein, and therefore that determination shall be made by the Commissioner on remand.

Plaintiff further argues the ALJ erred in ignoring the vocational expert's testimony that she could not perform work as a surveillance systems monitor if she could stand for only fifteen minutes at a time. Tr.

429. The Court agrees. It is not clear, however, whether or not the ALJ actually intended to adopt this limitation. As noted above, the ALJ found that plaintiff could both "stand and/or walk 1 hour and 6 hours total" and "stand and/or walk 15 minutes maximum and 2 hours total." Tr. 21, 24. Needless to say, these are fairly contradictory findings. Accordingly, on remand the Commissioner shall re-determine plaintiff's limitations regarding her ability to stand and/or walk, and how those limitations impact her capability of performing the job of surveillance monitor.

VII.    This Matter Should Be Remanded for Further Administrative Proceedings

        The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

        Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

>       (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Here, as discussed above, issues remain regarding evaluation of the medical opinion source evidence in the record concerning plaintiff's mental impairments, the mental functional limitations that should be included in her residual functional capacity assessment, and whether she is capable of performing other jobs existing in significant numbers in the national economy. Thus, this matter should be remanded to the Commissioner for further administrative proceedings.

## CONCLUSION

        Based on the foregoing discussion, the court finds the ALJ improperly determined plaintiff was not disabled. Accordingly, the ALJ's decision is REVERSED and, for the reasons set forth above, hereby is REMANDED to the Commissioner for further administrative proceedings in accordance with the findings

1    contained herein.

2         DATED this 6th day of June, 2006.

3

4

5                                             Karen L. Strombom
                                              United States Magistrate Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 16